IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| THOMAS STERLING REESE, | ) CIVIL ACTION 4:07-285-HFF-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I.  PROCEDURAL HISTORY

The plaintiff, Thomas Reese ("plaintiff" or "Reese")  filed applications for DIB and SSI benefits on October 27, 1995, alleging disability since June 27, 2000, due to primary lateral sclerosis; hand, arm, and leg numbness. (Tr. 13). This application was denied after a hearing was held on June 19, 1996, and it does not appear plaintiff appealed that decision.

On January 19, 2005, plaintiff filed a second claim for DIB and SSI benefits alleging disability since June 15, 2003. (Tr. 31, 69, 74). This claim was initially denied on May 4, 2005. (Tr. 10). Plaintiff appealed and asked for reconsideration which was denied on August 12, 2005. (Tr. 10). The plaintiff appealed the decision and requested a hearing on September 12, 2005. (Tr. 10). A hearing was held before ALJ Avots on May 12, 2006, in Greenville, South Carolina. The ALJ issued a decision denying the plaintiff's claim. The Appeals Counsel issued an ordering denying the request for review on December 8, 2006, thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review under section 205(g) of the Act.

## II.  FACTUAL BACKGROUND

The plaintiff was born on December 28, 1970, (Tr. 32) and was 35 years of age on the date of his hearing before the ALJ. (Tr. 64). Plaintiff is a high school graduate and has past relevant work as a cook.

## III.  DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

(1)  The ALJ committed legal error in rejecting the treating physician's opinion where the opinion was supported by clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence.

(2)  The ALJ committed legal error in failing to contact the treating physician to obtain additional information where he questions the lack of medical findings.

(3)  The ALJ committed legal error by ignoring the opinion of the state agency examining physician which was favorable to the plaintiff and by failing to provide any reason for his rejection.

(4) The ALJ committed legal error in concluding that the plaintiff should have obtained testing, in spite of his indigency.

(5) The ALJ erred in finding the plaintiff's reports of pain, symptoms and limitations not credible where he failed to consider objective medical and laboratory findings.

(6) The ALJ committed legal error in failing to determine if the Plaintiff's impairment could reasonably be expected to produce the plaintiff's pain or other symptoms.

In the decision of September 1, 2006, the ALJ found the following:

(1) The claimant meets the insured status requirements of the Social Security Act through December 30, 2008.

(2) The claimant has not engaged in any substantial gainful activity since June 15, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

(3) The claimant has the following severe combination of impairments: cervical degenerative disc disease, cervical transverse bone mass at C4/5 and C5/6, history of porphyria and cholecystitis with intermittent abdominal pain and nausea, and status-post gunshot wound to right lower extremity (20 CFR 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently. He can sit/stand/walk for six hours in a workday in a job that does not require frequent twisting and postural activity. He experiences intermittent episodes of moderate abdominal pain that interfere with his concentration for a few minutes at a time. This residual functional capacity is based on and consistent with the prior residual functional capacity in the decision of September 21, 1997.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on December 28, 1970, and was 32 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 CFR 404.1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

(11) The claimant has not been under a "disability," as defined in the Social Security Act from June 15, 2003 through the date of this decision (20 CFR 404.1520(g)).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally

equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).   The Court's scope of review is specific and narrow.  It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence.  42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established.  Five questions are to be asked sequentially during the course of a disability determination.  20 C.F.R. §§ 404.1520, 1520a (1988).  An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. § 404.1503(a).  Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).  An ALJ's factual determinations must

be upheld if supported by substantial evidence and proper legal standards were applied. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). He must make a <u>prima</u> <u>facie</u> showing of disability by showing she was unable to return to her past relevant work. <u>Grant v. Schweiker</u>, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. <u>Id</u>. at 191.

## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case. The medical records as set out by the defendant have not been seriously disputed by the plaintiff. Therefore, the undisputed medical evidence as stated by the defendant is set forth herein, in part.

On November 24, 2004, plaintiff presented at the hospital with a gunshot wound to his right leg following an altercation, for which Dr. Steven Martin, performed surgery. (Tr. 126-131).

Plaintiff also had an "acute bronchitis episode," successfully treated with medications, and Dr. Martin noted plaintiff had a "questionable history of porphyria," prior intestinal surgery, and a history of alcoholism (Tr. 126). X-rays showed a tibial fracture from the gunshot wound; hyperinflation of the lungs consistent with chronic obstructive pulmonary disease (COPD) (Tr. 135); and narrowing at the C4-5, C5-6 and C6-7 disc spaces consistent with degenerative disc disease (Tr. 132-33). A CT of the head performed due to plaintiff's altered mental state was negative (Tr. 134). Blood tests were positive for marijuana and opiates, and plaintiff admitted using alcohol, marijuana and tobacco (*see* Tr. 136, 142-43). Two days later, on November 26, 2004, T.S. Alam, M.D., discharged plaintiff with diagnoses of acute bronchitis; COPD; a gunshot wound with right tibial fracture, status post repair by Dr. Martin; and alcohol intoxication (Tr. 123-53).

A November 2004 "Work Statement" signed by a physician at Blue Ridge Orthopaedics indicated that plaintiff would be out of work from November 2004 until March 2005 (Tr. 186).

In December 2004, plaintiff followed-up with Dr. Martin following his right leg surgery. Dr. Martin recommended bearing weight as tolerated, ambulation and pin site care (Tr. 188-89). Plaintiff also complained of chronic abdominal pain relieved by smoking marijuana, stated he had a previous surgery to remove part of his intestine (*see* Tr. 201-02), and denied vomiting or diarrhea.

Kelly McCormick, Dr. Alam's nurse practitioner, noted that plaintiff also had right rib pain with a bony mass possibly secondary to a rib fracture that was not seen earlier. Plaintiff reported smoking three to five cigars a day, drinking alcohol daily, and smoking marijuana (Tr. 160-61).

By December 27, 2004, plaintiff was "ambulating and essentially full weightbearing," and x-rays "revealed satisfactory alignment and earlier progression to union." Dr. Martin recommended "weightbearing as tolerated" (Tr. 187).

On January 10, 2005, plaintiff had intermittent abdominal pain and nausea and complained of vomiting at times, especially with the smell of food. Nurse McCormick noted plaintiff had worked mostly in fast-food restaurants and was "not able to hold a job due to porphyria." Plaintiff walked on crutches, and he had right upper abdominal tenderness and some edema near his gunshot wound. Nurse McCormick diagnosed porphyria with recurrent abdominal pain with dyspepsia and nausea, rule out gallbladder dysfunction; a right tibula-fibula fracture with pins; degenerative disc disease of the neck; and tobacco use (Tr. 158-59).

On January 10, 2005, x-rays showed a "minimally displaced" sixth rib fracture (Tr. 156), and a right upper quadrant ultrasound was unremarkable (Tr. 157). A nuclear hepatobiliary scan on January 21, 2005, suggested gallbladder disease (Tr. 155).

On January 24, 2005, plaintiff was on crutches and bearing about 50% weight on his right leg. X-rays showed a healing fracture with good alignment.

On February 7, 2005, the notes from Keowee Primary Care and Internal Medicine noted plaintiff was still having abdominal pain and unable to work due to his medical condition. It was also noted that he was due to have his gallbladder out on February 24 by Dr. Tolmas. The impression was porphyria, chronic cholecystitis due for cholecystectomy on 02/24 by Dr. Tolmas. Tobacco dependence, sixth anterior rib fracture minimally displaced healing well with less pain now.(Tr. 223). This report contained the name of the Nurse Practitioner, Kelly McCormick and Dr. Alam.

On February 18, 2005, Dr. Martin removed the pins and cast from plaintiff's right leg, and removed his ingrown toenail (Tr. 162-66). On February 28, 2005, plaintiff had no complaints, and x-rays showed a healing fracture and good alignment. Dr. Martin prescribed a hinged knee brace and recommended plaintiff "[c]ontinue to be partial weightbearing with exercises for knee range of

motion and straight leg raising" (Tr. 184). On March 28, 2005, plaintiff presented to Dr. Martin with no complaints, and x-rays showed a healed fracture with good alignment. Dr. Martin noted plaintiff was "ambulating now with full weightbearing, but still uses a single crutch and his hinged knee brace." On exam, plaintiff had full knee range of motion and well-healed wounds with no residual swelling. Dr. Martin recommended plaintiff "[t]ransition off" his knee brace and crutch and that he follow up in two months (Tr. 183).

On June 8, 2005, plaintiff complained to Dr. Martin that he still had some right leg pain with prolonged ambulation. On examination, he had an antalgic gait, but well-healed wounds, full ankle and knee ranges of motion, and no soft-tissue swelling. X-rays revealed a healed fracture with good alignment. Dr. Martin stated "[Plaintiff] will have activity as tolerated including work" (Tr. 182).

On June 29, 2005, plaintiff was seen at Keowee Primary Care and Internal Medicine where he complained of left groin pain where he had had previous hernia repair surgery. He also complained of continued abdominal pain and nighttime bowel movements, which he did not have prior to his gallbladder removal surgery. He said he also had thoracocervical back pain radiating into his left shoulder and causing parethesias in both arms. He reported that he was drinking less alcohol, and that smoking marijuana before each meal provided "good pain relief and good nausea relief." Plaintiff was diagnosed a possible recurrent left inguinal hernia, IDA, porphyria with chronic cholecystitis, status post cholecystectomy; history of partial gastrectomy; cervicothoracic back pain with bilateral radiculopathy; history of lumbar degenerative disc disease; cervical degenerative disc disease; tobacco dependence; sixth anterior rib fracture, minimally displaced, completely healed now; nausea relieved by THC (marijuana), and gastroesophageal reflux disease (GERD). It was opined that "[Plaintiff] will probably not be able to hold a job due to his chronic abdominal pain"

(Tr. 224-25). Again, this report contained the names of both Nurse Practitioner McCormick and Dr. Alam.

On July 1, 2005, a radiologist, Dr. Charles Parke of Anderson Radiology, reported a CT of the cervical spine showed a bony mass or overgrowth at C4-C6 with nerve root compressions at C5 and C6 likely; mild broad-based disc protrusions at C4-5 and C5-6 and to a lesser degree at C6-7; an incomplete bone fusion at C1, likely a due to congenital anomaly or remote trauma; and degenerative changes at C6-7 (Tr. 230-31).

On November 22, 2005, Nurse McCormick and Dr. Alam noted that plaintiff had "chronic abdominal pain, thought to be as a result of porphyria"; back, shoulder and arm pain; and degenerative changes in his cervical spine. He concluded,

> the smell of food, which has been his primary source of employment in fast food positions makes him very sick despite already having his gallbladder out. The only thing that has been able to control his pain and nausea has been the use of THC. I doubt very seriously that he could hold down any job due to his current permanent condition. . . . Despite his noncompliance at this point, I do strongly believe that he will not be able to return to work in functional capacity due to his chronic and what appear to be permanent medical issues.

(Tr. 200).

On December 5, 2005, plaintiff asked Dr. Alam to fill out disability paperwork. Plaintiff said he had back pain, daily abdominal pain with multiple bowel movements, and rectal inflammation over the past couple weeks, somewhat resolved with over-the-counter medication. Dr. Alam noted that plaintiff was very anxious and reported being unable to work full-time due to nausea, abdominal pain, and diarrhea. He said the "[o]nly thing [that kept] him out of [the] bathroom and allow[ed] him to eat [was] THC." On exam, plaintiff had abdominal tenderness, positive bowel sounds and rectal

irritation with some internal hemorrhoids. Dr. Alam diagnosed proctitis; recurrent left inguinal hernia, not surgical at this time; IDA; positive hemocult (blood in his stool); cervical thoracic back pain, chronic with bilateral radiculopathy, inoperable; degenerative lumbar and cervical disc disease; THC abuse; chronic nausea; and GERD. He referred plaintiff to a gastroenterologist (Tr. 226-27, 234-35).

Nurse Practitioner McCormick also completed a functional capacities examination and form indicating plaintiff's symptoms included chronic diarrhea, abdominal pain and cramping, bloody diarrhea, loss of appetite, vomiting, mucus in his stool, and rectal pain. McCormick noted that plaintiff's symptoms were relieved by THC, and that he vomited if he did not have it. He stated that objective tests and exams supported his findings. He indicated that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand for 30 minutes at a time for less than two hours total in an eight hour day; sit for two hours at a time for at least two hours total in an eight-hour day; and walk four blocks. The nurse stated plaintiff did not need a job that allowed him to alternate positions at will, but would need to use the restroom every hour, lie down five to 10 times per day, and be absent from work more than three times per month. Nurse McCormick also indicated that plaintiff's symptoms would frequently interfere with attention and concentration and that plaintiff could not tolerate even low stress jobs (Tr. 219-22). Dr. Alam wrote a letter stating that he "concur[red] with [Nurse McCormick's] findings and assessments" (Tr. 218).

On February 14, 2006, W. Russell Rowland, M.D., performed a consultative physical evaluation of plaintiff. Plaintiff presented with 13 "Ben Gay" patches across his back and stated that he had constant back pain since 1997. He said he sustained a gunshot wound to his right leg in 2004, causing his right leg to become weak on occasion. He also reported constant nausea, diarrhea five

to six times a day and four to five times a night since his intestinal surgery (in 1996) and vomiting once per week. He said his abdominal pain was relieved by smoking marijuana and that his gallbladder removal one year prior did not help his symptoms. He said he could stand 30 or 40 minutes and sit for two hours. He said he stopped working at his last job as a cook in 2004 because of difficulty lifting and a "sick stomach." He said he currently smoked 20 cigars per week and two "joints of marijuana" per day, and drank three to four beers per week. He said he did not cook, clean, or do yard work. Dr. Rowland noted that plaintiff used a cane in his right hand and bore weight on it and limped, reportedly due to back pain, but that he "had [Plaintiff] walk without a cane with no problem." On exam, plaintiff had a normal gait and station, normal cervical spine range of motion, somewhat reduced lumbar spine range of motion, some muscle tightness in his back, normal upper extremity ranges of motion, full strength in the upper and lower extremities, somewhat reduced hip and knee ranges of motion, a normal neurological status, and no extremity edema. Plaintiff complained of "tenderness [over] almost the entire back," but Dr. Rowland noted that "[w]ith distraction [he] did not perceive tenderness." He diagnosed "[p]orphyria, according to the record[,] [t]his would have to be acute intermittent porphyria"; chronic and constant upper abdominal cramping pain associated with nausea and vomiting once per week; chronic diarrhea since intestinal surgery, likely "related to the surgery and not the porphyria"; and constant generalized back pain since 1997. He concluded,

> [f]rom the musculoskeletal standpoint, I really do not find any limitations. The only limitations would be chronic gastrointestinal symptoms of abdominal cramping and nausea, some intermittent reflux at night. He has chronic diarrhea five or six times in a day and four to five times at night, which might be related to previous surgery.

(Tr. 209-13). Dr. Rowland completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form. He concluded that plaintiff's ability to lift, carry, stand, walk, sit, push, pull, use his hands, see and communicate were not affected by his impairments and that plaintiff could frequently climb, balance, kneel, couch, crawl and stoop. He found that plaintiff should have limited exposure to fumes, odors, chemicals and gases due to chronic nausea (Tr. 214-17).

On April 14, 2006, plaintiff said he did not see a gastroenterologist because he did not have insurance. He said he was recently seen in the emergency department but could not afford the $70 for his prescription. Dr. Alam noted that plaintiff "desperately need[ed] a gastroenterology referral, but no one was [sic] seen him without up from [sic] cash." He prescribed suppositories and stated he would call the pharmacy to get plaintiff a price reduction. It was noted that "[H]is disability hearing is on 12th May. As soon as this is over, I hope he can get on medicaid and I can get him referred immediately. If he gets significantly worse, we will require hospitalization and consultation at that point. (Tr. 228- 29, 232-33).

## V.  PLAINTIFF'S SPECIFIC ARGUMENTS

Plaintiff first argues that the ALJ failed to accept the opinions of the treating sources without citing any contradictory evidence. However, plaintiff argues that regarding the gastrointestinal symptoms, Dr. Rowland's report is not inconsistent with the findings of the treating sources. (Tr. 213). Plaintiff argues that Dr. Rowland finds the plaintiff has "chronic diarrhea since intestinal resection." Tr. 213. Plaintiff argues that Dr. Rowland does question if the diarrhea is caused by Porphyria or the intestinal resection, but finds the plaintiff has "Porphyria, according to the record." Plaintiff argues that where Dr. Rowland's finding exam is consistent with the opinion of the treating

source, it is difficult to see the ALJ's basis for rejecting the opinion of the treating sources in this area and not according them controlling weight. (Plaintiff's brief).

Plaintiff argues that the ALJ committed legal error by ignoring the opinion of the state agency examining physician which was favorable to the plaintiff and by failing to provide any reason for his rejection. Plaintiff argues that the ALJ states that Dr. Rowland's examination is the most thorough review of the claimant's signs and symptoms in the record. However, he then does not address Dr. Rowland's findings that are favorable to the plaintiff.

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record. 20 C.F.R. § 404.1527(d) (1997). Conversely, if a physician's opinion is not supported by medically-accepted clinical and laboratory diagnostic techniques and is not consistent with the other evidence in the record, it will not be given controlling weight. In evaluating how much weight should be given to the opinion of a physician, the nature and extent of the treatment relationship will be taken into account. Id.

Although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 524, 527 (4th Cir. 1988); Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589. The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an

expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

This case is a little different than the normal case in which a plaintiff usually argues that the ALJ did not give controlling weight to the treating physician's opinion. In this case, the ALJ specifically accepts a portion of Dr. Rowland's report and states that his examination is the most thorough review of plaintiff's signs and symptoms but then fails to discuss the fact that Dr. Rowland found that plaintiff's "only limitations would be chronic gastrointestinal symptoms of abdominal cramping and nausea, some intermittent reflux at night. He has chronic diarrhea five or six times in a day and four to five times at night which might be related to previous surgery...it might be worthwhile to call Dr. Alam to get further information on his gastrointestinal evaluation and other tests that have been done." (Tr. 213).

The ALJ did not explain why he ignored some of Dr. Rowland's conclusions with regard to limitations and accepted other parts of his report when it listed no limitations. Specifically, the ALJ did not explain why he ignored Dr. Rowland's conclusion that plaintiff had limitations due to chronic gastrointestinal symptoms with cramping and nausea and chronic diarrhea several times during the day and night. These findings support the treating physician's conclusions and are not contradictory with respect to plaintiff's problems with abdominal cramping, nausea, and diarrhea. Further, the consulting examiner, Dr. Rowland, recommended that the Commissioner contact Dr. Alam to get additional information on this gastrointestinal evaluation and other tests that had been performed which does not appear to have been done. Further, the treating physician, Dr. Alam had noted that plaintiff desperately needed a gastroenterology referral but did not have the money to pay

up-front. The ALJ did not give controlling weight to the treating physicians when there was no contradictory evidence and failed to discuss the portion of Dr. Rowland's report that tended to support that of the treating physician. The ALJ found Dr. Rowland's report to be accurate as to portions that found plaintiff had no limitations but then ignored certain parts that supported the conclusions of the treating physician with respect to his stomach problems without reason. Based on this, the undersigned recommends that this case be remanded to the Commissioner for further consideration of Dr. Rowland's report and to explain the reasons for ignoring portions of that report when it supported the reports of the treating physician. Further, if there is no contradictory evidence presented that supports failing to give the treating sources opinion greater weight, then these reports should be given the proper analysis under the Rules. Additionally, the undersigned finds that plaintiff should be referred for an evaluation by a gastroenterologist. Depending on the results of further examination and tests relating to plaintiff's stomach/gastrointestinal and related issues, it may be appropriate to engage a vocational expert.

As a result of the ALJ's failure to explain his assessment of why Dr. Rowland's report concerning plaintiff's stomach/gastrointestinal problems and associated symptoms, did not support the treating physicians' reports, the court is unable to ascertain whether the Commissioner's decision is supported by substantial evidence.

## VI.  CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, speculate on a barren record devoid of the appropriate administrative analysis.  In the absence of any reason being identified by the ALJ for

rejecting portions of the examining physician's report finding limitations based on gastrointestinal symptoms, the court is unable to complete the review mandated by law.

Accordingly, IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and that this matter be REMANDED TO THE COMMISSIONER PURSUANT TO SENTENCE FOUR for further proceedings in accordance with this opinion.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 5, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**